THIRD DEPARTMENT, APRIL, 1994

(April 7, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v ALAN R. FORBES, Appellant-Respondent. [609 NYS2d 961] —Weiss, J. Appeals (1) from a judgment of the County Court of Tioga County (Siedlecki, J.), rendered December 16, 1988, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the first degree, and (2) from an order of said court (Smith, J.), entered May 17, 1993, which granted defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

After codefendant Michael Roberts had sold one eighth of an ounce of cocaine to State Police Investigator Patrick Smith and a confidential informant in Roberts' trailer on November 30, 1987, Roberts then agreed to sell them eight ounces of the drug. On December 10, 1987, defendant was seated in an automobile driven by his friend Christopher Beauvois, and when given a signal by Roberts defendant is alleged to have thrown a package containing cocaine given him by Roberts out of his automobile and through the open window of the car driven by Smith. Roberts, his wife (Lisa Roberts), Beauvois and defendant were then arrested at the scene. Roberts, his wife and defendant were indicted for criminal sale of a controlled substance in the first degree and, following a joint trial with Roberts (see, People v Roberts, 188 AD2d 735, lv denied 81 NY2d 891), defendant was convicted as charged and sentenced to an indeterminate term of 16 years to life imprisonment. He has appealed from the judgment of conviction. His subsequent motion pursuant to CPL 440.10 to vacate the conviction due to an alleged violation of his due process rights and his right to effective assistance of counsel was granted after a hearing and the judgment vacated. The People have appealed from this order.

We first consider defendant's appeal from the judgment of

conviction and focus upon his argument that he was denied effective assistance of counsel. While the right to the effective assistance of counsel is guaranteed by both the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6), "[w]hat constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation" *(People v Baldi,* 54 NY2d 137, 146; *see, People v Droz,* 39 NY2d 457). Further, while hindsight often enables a convicted defendant to point out what he or she believes to have been trial errors, unsuccessful trial tactics do not automatically demonstrate that representation was ineffective *(see, People v Rivera,* 71 NY2d 705, 708). There is no litmus test with which to determine inadequate or ineffective representation *(People v Ellis,* 81 NY2d 854, 856). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" *(People v Baldi, supra,* at 147 [citations omitted]).

Within the parameters of these basic principles, our examination of the record compels the inescapable conclusion that the representation provided this defendant by assigned counsel was ineffective and mandates reversal of his conviction. We note that counsel implored County Court at the outset not to assign him because he had never before tried a felony case and did not believe he was capable of providing adequate representation. Defendant points to many specific errors, not all of which we agree with or believe require extensive discussion here. Perhaps the most glaring error demonstrating counsel's ineffectiveness was his failure to request limiting instructions from County Court to the jury on several different portions of testimony elicited by the prosecutor. For example, Smith testified about defendant's presence in Roberts' trailer on November 30, 1987 when the cocaine was sold and arrangements were made for the December 10, 1987 sale of eight ounces, including hearsay testimony that Roberts told Smith that he might send defendant to complete the later sale. Although the failure to object to evidence of the uncharged crime or to request a *Ventimiglia* hearing *(People v Ventimiglia,* 52 NY2d 350) itself might not have been proven erroneous if the purpose of the testimony was to prove defendant's intent or a criminal partnership, the absence of limiting instructions to the jury when the testimony was offered, and again in the jury charge, to consider the testimony solely on

credibility left open the opportunity for the jury to consider that testimony as proof of defendant's criminal propensity *(see, People v Ely,* 68 NY2d 520). Roberts' counsel was permitted to ask defendant if he brought the cocaine to the November 30, 1987 sale. The prosecution was also permitted to question defendant about drug transactions with Mark Eldridge, events wholly unrelated to the charged crime. Both the prosecutor and Roberts' counsel emphasized on summation defendant's participation in the earlier sale and counseled the jury that it could use the evidence to determine that defendant knowingly participated in the December 10, 1987 crime.

Evidence of uncharged crimes is clearly inadmissible to prove criminal propensities *(see,* CPL 300.10; *People v Williams,* 50 NY2d 996; *People v Allweiss,* 48 NY2d 40, 47; *People v Molineux,* 168 NY 264, 313; 1 CJI[NY] 20:00), and the failure to request limiting instructions was reversible error *(see, People v Butts,* 177 AD2d 782; *People v Vannoy,* 174 AD2d 790; *People v Torres,* 155 AD2d 226).

In addition, counsel's failure to request that the jury be instructed to separately consider the evidence against each defendant and not to commingle the evidence against each was clearly error requiring that the conviction be reversed *(see, People v Parker,* 178 AD2d 665; *see also,* CPL 300.10; 1 CJI[NY] 20:00). The failure to request that the jury be instructed to determine whether Roberts and defendant were accomplices and, if so found, that Roberts' testimony had to be corroborated *(see,* CPL 60.22), was similarly reversible error *(see, People v Jones,* 73 NY2d 902; *People v Vataj,* 69 NY2d 985).

On the other hand, while several of defense counsel's remarks in his summation, such as admitting the strength of the People's case and implying that defendant lacked credibility, were inexplicable, we cannot say, in the entire context, that they rose to the level of ineffectiveness *(see, People v Hernandez,* 184 AD2d 439, *lv denied* 80 NY2d 904). Counsel apologized for defendant's "boneheaded conduct" and his own "dopey" and "prosecutorial" demeanor, and then conceded that the prosecution "had a heck of a lot" of evidence and of his own disbelief of defendant's testimony, telling the jury "you might not believe him; it could go either way. I don't know; that's up to you."

In sum, defendant's principal contention that he was innocent of any crime and duped into his participation on December 10, 1987 was virtually negated by the myriad of evidence, otherwise inadmissible or which, at the very least, had to be

critically limited by jury instructions. The absence of limiting instructions could easily have led the jury to conclude that defendant not only had criminal propensities, but more likely than not was directly involved as Roberts' partner in both the November 30, 1987 and December 10, 1987 criminal transactions. The failure of counsel to prevent, or even attempt to prevent, speculation and conjecture equated to ineffective assistance mandating that the conviction be reversed.

We turn next to defendant's argument that County Court abused its discretion and erred in granting the prosecution's consolidation motion and ordering a joint trial. He contends, albeit tangentially in a footnote to his brief, that the core of each defense was in irreconcilable conflict with the other which, standing alone, would lead the jury to infer defendant's guilt, citing to *People v Cardwell* (78 NY2d 996, 997-998). Roberts sought to prove he was only a broker and that it was defendant, an experienced dealer with access to large quantities of drugs, who made the sale. Defendant, on the other hand, sought to prove he was innocent of any crime and had been an unwitting pawn in Roberts' format. Each vigorously attacked the other and the witnesses who testified. The record demonstrates that Roberts' counsel was an overly aggressive adversary toward defendant throughout, in effect becoming a second prosecutor *(see, People v Cardwell, supra,* at 998). We find under these circumstances that there was a "significant possibility that the jury unjustifiably concluded by virtue of the conflict itself that both defenses were incredible and gave undue weight to the government's evidence" *(People v Mahboubian,* 74 NY2d 174, 186), and that it was therefore error to have ordered a joint trial.

Having reached the conclusion that the judgment convicting defendant must be reversed for the reasons stated and that a new trial is required, it is unnecessary to address defendant's remaining arguments. Further, the appeal by the People from the order granting defendant's CPL 440.10 motion to vacate the judgment of conviction should be dismissed as academic.

Cardona, P. J., Mikoll and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Tioga County for a new trial. Ordered that the appeal from the order is dismissed, as academic.